UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ALLTEC LIFTING SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3-12-218 |
| | § | |
| ARKANSAS-OREGON | § | |
| PNEUMATICS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alltec Lifting Systems, LLC ("Alltec") contracted with Defendant Arkansas-Oregon Pneumatics, Inc. ("Pneumatics") to fabricate a custom-designed device for use at Johnson Space Center. Alltec sued Pneumatics after the device allegedly failed to perform. Pneumatics moves to dismiss the lawsuit for lack of personal jurisdiction. Having considered the briefing, the arguments of counsel, and the applicable law, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

### I.   BACKGROUND

Alltec is a Texas limited liability company with its principal place of business in Galveston County. Pneumatics is an Arkansas corporation with its principal place of business in Crossett, Arkansas. Alltec entered into a contract with nonparty CSC Applied Technology Group to provide a custom lift assembly,

consisting of a "ring and cradle," to be used at Johnson Space Center. Alltec, in turn, contacted Pneumatics in Arkansas to inquire if Pnuematics was interested in bidding for the project. Pneumatics submitted its bid, and Alltec representatives traveled to Arkansas to discuss the proposal and negotiate the contract. Before design and construction commenced, Pneumatics participated in a conference call with Alltec, CSC, and Johnson Space Center. Alltec ultimately awarded the job to Pneumatics. Pneumatics executed the work order and e-mailed it back to Alltec in Texas.

Pneumatics manufactured the ring and cradle in its Arkansas shop. An Alltec representative was on site in Arkansas to oversee the production of the ring, and Alltec was responsible for transporting the finished custom lift assembly from Arkansas to Texas. Alltec wired all payments from Texas to Pneumatics's Arkansas bank account. During the time it was working on the custom lift assembly project, Pneumatics also submitted seven e-mail bids to Alltec seeking other jobs.

Upon receiving the ring and several additional project components, Alltec discovered multiple alleged defects, which Alltec repaired at its own expense. Then, during the first test of the cradle, the device failed when one of the welds broke. Pneumatics employees traveled to Texas to retrieve the cradle. After repairing the cradle in Arkansas, Pneumatics employees returned it to Texas.

According to Alltec, when it tested the repaired cradle, the device failed again. Alltec attributes these failures to Pneumatics's poor fabrication. As a result of these failures, Alltec requested that Pneumatics lower its price. Pneumatics did not respond to that request, but instead sent Alltec a demand letter for payment, which led to the filing of this suit.

Alltec filed suit in Texas state court. The petition alleges that Pneumatics negligently fabricated the ring and cradle and breached the contract by failing to comply with its specifications. Pneumatics filed a special appearance in state court and then timely removed the action to this Court based on diversity of citizenship. Shortly thereafter, Pneumatics filed its motion to dismiss for lack of personal jurisdiction, arguing that it does not have sufficient minimum contacts with Texas to support the constitutional exercise of jurisdiction.

Pneumatics has no branches or offices in Texas, owns no property in Texas, is not a general or limited partner of any Texas partnership, and has not performed any other contracts in Texas in more than six years. But Alltec contends that the Court has personal jurisdiction over Pneumatics based on its participation in a conference call with Texas residents, knowledge that that the custom lift assembly was going to be used at Johnson Space Center, traveling twice into Texas for retrieval and return of the cradle, and e-mailing seven bids seeking hundreds of thousands of dollars in additional projects from Alltec.

## II. LEGAL STANDARDS

### A. Rule 12(b)(2) Burden

The plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction when a nonresident defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). "But the court is not obligated to credit conclusory allegations, even if uncontroverted." *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, No. H-10-1708, 2012 WL 590926, at *2 (S.D. Tex. Feb. 22, 2012) (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

**B.     The Law of Personal Jurisdiction**

Federal courts sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant and exercising such jurisdiction is consistent with due process. *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004) (citation omitted). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045. Federal due process permits the exercise of personal jurisdiction over a nonresident defendant when: (1) "the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state;" and (2) "the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Wilson*, 20 F.3d at 647).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Two recent Supreme Court decisions issued on the same day highlight the substantially higher degree of contacts needed to establish general jurisdiction, which is "all-purpose" and grants a court the power "to hear any and all claims against" a party regardless of where

the events at issue took place, than specific jurisdiction, which is "case-linked" and grants a court only the power to hear "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Compare Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citations and internal quotations marks omitted) (ruling on general jurisdiction), *with J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (ruling on specific jurisdiction).

A court has general jurisdiction over a nonresident defendant "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citation omitted). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

In contrast, "if a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citation and internal quotations marks omitted). Even a single

contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted). "[T]he touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citations and internal quotation marks omitted).

Once the plaintiff makes a prima facie case that the defendant has sufficient contacts, to establish either general or specific jurisdiction, the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable, meaning it would offend traditional notions of fair play and substantial justice. *See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citations omitted).

### III. ANALYSIS

#### A. General Jurisdiction

Alltec argues that the Court may exercise both general and specific jurisdiction over Pneumatics. As to general jurisdiction, the Court disagrees. Pneumatics's contacts with Texas hardly represent the kind of "continuous and systematic" contacts that "render [it] essentially at home" in Texas. *Goodyear*, 131 S. Ct. at 2851; *see also Helicopteros*, 466 U.S. at 415–17 (rejecting general jurisdiction when the nonresident defendant's contacts with Texas "consisted of

sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas company] for substantial sums; and sending personnel to . . . facilities in Fort Worth for training").

### B. Specific Jurisdiction

#### 1. *Minimum Contacts*

Alltec presents a stronger case for specific jurisdiction, and the Court concludes that the exercise of such jurisdiction over Pneumatics is within the confines of due process.[1] Although "merely contracting with a resident of a forum state does not establish minimum contacts," *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), courts have typically found sufficient contacts in cases like this one in which a defendant custom designs a product for a particular buyer in the forum state. *See, e.g.*, *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 377, 379 (5th Cir. 2002) (affirming exercise of jurisdiction over Italian defendant who contracted to furnish a ship with specified

---

[1] Because specific jurisdiction requires a link between the defendant's contacts and the specific claim being asserted, it is a claim-specific inquiry. *See Seiferth*, 472 F.3d at 274–75. But Alltec's breach of contract and negligence claims arise out of the same contacts with Pneumatics, so the due process analysis is the same for both claims. *See id*. at 275 (explaining that when "a plaintiff's claims relate to *different* forum contacts of the defendant, specific jurisdiction must be established for each claim" (italics added)); *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007) ("This Court does not extend the *Seiferth* requirement to establish jurisdiction for each claim to cases where all claims arise from the same contacts.").

capabilities for transporting a good to Louisiana); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 417 (5th Cir. 1993) (reversing dismissal for lack of jurisdiction when Minnesota third-party defendant manufactured custom goods with actual knowledge that they would be used by Texas plaintiff); *Plastic Fabricating, Inc. v. Electrex Co.*, No. 7:12-CV-00119, 2012 WL 1970237, at *3 (W.D. Va. May 30, 2012) (exercising jurisdiction over Michigan defendant that requested "custom products" from Virginia plaintiff); *Brookfield Mach., Inc. v. Calbrit Design*, 929 F. Supp. 491, 494 (D. Mass. 1996) (finding minimum contacts when California defendant contracted to create custom-made tool designs for Massachusetts plaintiff for ultimate sale to a Delaware nonparty).

Customizing a product for a buyer in the forum state, as opposed to merely contracting to sell in the forum state the same product a company sells in numerous other fora, often demonstrates the "purposeful availment" that is at the heart of the minimum contacts inquiry. *See Burger King*, 471 U.S. at 475 (citation omitted). And the actual knowledge of use in the forum state that a defendant typically has when it tailors its good to a specific buyer avoids some of the thornier foreseeability issues that arise in personal jurisdiction law, such as whether placing a good into the stream of commerce is sufficient, *see generally Nicastro*, 131 S. Ct. at 2785 (dividing 4–4 over whether placement into the stream-of-commerce alone is sufficient to confer specific jurisdiction or whether additional availment of the

9 / 14

forum state is needed); *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987) (same), or whether a defendant could anticipate that an act in one state could have tortious effects in another state, *see Calder v. Jones,* 465 U.S. 783, 789–90 (1984) (grappling with the "effects test"); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (same). Indeed, Justice O'Connor recognized the significant role product customization may play in the contacts analysis when she listed "designing the product for the market in the forum State" as one of the additional factors that she and three other justices thought necessary to establish jurisdiction in stream-of-commerce cases. *Asahi Metal*, 480 U.S. at 112 (O'Connor, J.)

Pneumatics's contacts with Texas are similar to those the defendants had with the forum states in *Ruston* and *Pignone*.[2] *Ruston* involved a Minnesota third-party defendant that had contracted with the Minnesota defendant to manufacture

---

[2] Both *Ruston*, 9 F.3d at 419–21, and *Pignone*, 310 F.3d at 380–81, applied the stream-of-commerce test, but that analysis seems unnecessary when a defendant had actual knowledge that its products would be used in the forum state. Stream-of-commerce analysis typically applies when a plaintiff can show only that it was foreseeable that a product would be used in the forum state. *See, e.g.*, *Ruston*, 9 F.3d at 419 ("[M]ere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." (quoting *Asahi Metal*, 480 U.S. at 111)). In any event, even if stream-of-commerce were the appropriate doctrine to apply, this case does not implicate the uncertainty over which Supreme Court stream-of-commerce opinion controls, *see Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2011 WL 444362, at *6 (S.D Miss. Sept. 23, 2011) (concluding that the Fifth Circuit would still follow Justice Brennan's *Asahi* approach because Justice Kennedy's *Nicastro* opinion did not garner a majority), because Pneumatics's customization of the product for a Texas customer satisfies even Justice O'Connor's more stringent approach.

component parts of gas turbine engines sold to the plaintiff in Texas. *Ruston*, 9 F.3d at 417. The plaintiff filed suit for breach of contract, breach of warranty, and strict products liability, and the defendant sued the third-party defendant for contribution and indemnity. *Id.* The third-party defendant moved to dismiss for lack of personal jurisdiction because it did not conduct business in Texas, had no representatives or employees in Texas, had no agent for service of process in Texas, had not contracted with any Texas resident, had not committed a tort in Texas, had no direct contact with the Texas plaintiff, and performed all of the work on the contract in Minnesota. *Id.* In finding that the third-party defendant had sufficient minimum contacts with Texas, the Fifth Circuit emphasized that the third-party defendant "*knew* as a fact that the products were going to be delivered to a specific user in Houston, Texas." *Id.* at 420 (italics in original). The third-party defendant also "reasonably should have anticipated that it could be haled into court in Texas" given "the visits of its own employees to Texas to serve [the defendant's] customers." *Id.* at 420–21.

In *Pignone*, an Italian shipper entered into a contract to supply a vessel for the transportation of a reactor from Italy to New Orleans. *Pignone*, 310 F.3d at 377. Because of the size of the reactor, the "contract required that [the defendant] furnish a ship possessing specified performance capabilities," including a particular crane that would enable unloading the reactor at the destination port. *Id.*

The Fifth Circuit agreed with the district court's assessment that "[b]y agreeing to secure a vessel with a satisfactory onboard loading crane that it knew would be used to unload cargo in Louisiana, [the defendant] reasonably should have anticipated that its failure to meet its contractual obligations might subject it to suit there." *Id.* at 379.

The same is true with respect to Pneumatics's contacts with Texas. From its initial discussions with Alltec to its formal bid and through final manufacture and repair, Pneumatics always understood that the lift was destined for the Johnson Space Center in Texas. By designing the product specifically for a customer in Texas, making two trips to Texas to service the product, and continuing to solicit business from Alltec on unrelated projects, Pneumatics purposefully availed itself of the privilege of doing business in Texas and the benefits and consequences that accompany that privilege, which in this case include having to defend a lawsuit. *See Burger King*, 471 U.S. at 475; *Pignone*, 310 F.3d at 379. Pneumatics's contacts with the Texas are sufficient.[3]

---

[3] Pneumatics relies heavily on *Buckeye Aviation L.L.C. v. Barrett Performance*, No. 09-10-00247-CV, 2011 WL 2420987, at *4–6 (Tex. App.—Beaumont June 16, 2011, no pet.), in arguing that its contacts are not sufficient. But in noting that "the facts alleged must indicate that the seller intended to serve the Texas market," *id.* at *5, the *Buckeye* court recognized that it was not addressing a case like this one in which a defendant agreed to design a customized product for use in Texas. Moreover, the defendant in *Buckeye* did not have employees travel to Texas or solicit additional business with the plaintiff as in this case. *See generally id.* Aside from these key factual distinctions, the contacts analysis is a question of federal constitutional law.

      *2.     Reasonableness*

With minimum contacts established, and with those contacts directly related to the breach of contract and negligence claims asserted in this lawsuit, the last inquiry is whether exercising personal jurisdiction over Pneumatics offends notions of "fair play and substantial justice." *See Seiferth*, 472 F.3d at 271 (citation omitted). The following factors influence the reasonableness determination: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 760 (citation omitted).

Pneumatics did not address these factors in its motion to dismiss, instead focusing on the minimum contacts analysis. This was a sound strategy given the Fifth Circuit's view that "once minimum contacts are established, the interests of the forum and of the plaintiff justify even large burdens on the defendant." *Id.* at 764 (citation omitted). Defending a lawsuit in a forum next to its state of residence is not a substantial inconvenience for Pneumatics. In contrast, Texas has a significant interest in seeing that one of its corporations obtains what it bargained for and that one of its most treasured public institutions, the Johnson Space Center, obtains a safe, quality product. Alltec has a substantial interest in litigating this

matter in its home forum where the product at issue is also now located. And Arkansas shares an interest with Texas in enforcing contracts and ensuring the safety of products used in the aerospace industry. For these reasons, the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The Court has jurisdiction over Pneumatics.

### III. CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction (Docket Entry No. 4) is **DENIED**. The case will proceed in this Court.

SIGNED this 16th day of November, 2012.

_____
Gregg Costa
United States District Judge